## Estate of Fred W. Scott, Deceased.

516

Argued April 27, 1933.

Before TREX-
LER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER and JAMES, JJ.

*A. C. Purdy,* and with him *Samuel S. Scott,* for ap-
pellant, cited: Graham v. Graham's Executors, 34
Pa. 475; Gilbraith's Estate, 270 Pa. 288; Calvart v.
Eberly, Adm., 302 Pa. 152.

*Fred C. Kiebort* of *Thomas & Kiebort,* and with him
*John D. McIntyre* of *Bialas, Ryan, Irons & McIntyre,*
for appellee, cited: Snyder v. McGill, Admx., 265 Pa.
122; Lamb v. Prettyman, 33 Pa. Superior Ct. 190.

OPINION BY TREXLER, P. J., July 14, 1933:
This matter arose in the distribution of the estate
of Fred W. Scott, deceased. The facts are briefly
stated in the opinion of Judge MITCHELL of the

orphans' court: "Vernon F. Johnson presented his claim for $1,500 for caring for a farm property called 'Shadeland,' owned by decedent, situate in Crawford County, Pennsylvania. This farm was purchased by Mr. Scott in November, 1926, at a sale by the sheriff of Crawford County. On the day of the sale, immediately after the property had been sold to Scott, he and Johnson had a conversation. Scott asked Johnson to stay on the farm and to look after it until it could be sold. He agreed to pay Johnson $1,500 for his service as caretaker. Johnson accepted the proposition, went to live in one of the houses on the farm and looked after the property until it was sold by Scott in June, 1927. The claim is supported by the testimony of several witnesses, and there was no successful denial of the contract and the service rendered. The claim is therefore allowed."

Our inquiry must be whether there is sufficient evidence to prove the contract and its performance. A witness named Finnucan testified that he was at the sheriff's sale when Mr. Scott bought a farm known as "Shadeland," and Mr. Johnson, the claimant, came outside and the witness heard the conversation, referred to in the opinion of the lower court, part of which is as follows: Mr. Scott stated, "Well, I've got it and now what am I going to do with it." He then asked Mr. Johnson, the claimant, what he was going to do, he said, "Nothing in particular," then Mr. Scott said to him, "Well, you stay there and look after it for me;" Mr. Johnson replied, "I have been fed up on promises so much, I am not going to do anything until there is a stated sum," to which Mr. Scott replied, "Well if you will stay there and look after it until I am able to sell it, which I expect in the near future, I will give you $1,500." Sometime in the fall along December, 1926, the witness again saw Mr. Scott, he asked him whether Mr. Johnson was staying on

the farm and looking after the property, and the witness said, "Yes, he did." Mr. Scott continued, "He can afford to stay here. I have offered him $1,500 to stay here and look after it for me." There is the testimony of but one witness to the alleged contract between the decedent and the claimant, but the narrative is clear and, no doubt, the auditing judge was convinced of its truth. One witness, if believed, is sufficient. The matter is confirmed by the fact that there is abundant proof that, Johnson, the claimant, remained upon the farm, and that he continued to occupy a room there and exercised some guardianship over it. Whilst there is some attempt made to show that Johnson's supervision of the farm was merely perfunctory and involved no work on his part, there was sufficient testimony to show that he complied with his part of the contract. The contract had an element of wager in it, but no illegality attached to it. The uncertainty of the term, might, if it were short, make the sum paid for the services very high, whilst if it continued for a duration of greater length, it might be correspondingly low. That was the risk which both parties took. The orphans' court and the auditing judge both came to the conclusion that there was sufficient testimony to sustain the claim. This gave to the finding the effect of a jury's verdict, Catalano's Estate, 309 Pa. 249, and there being sufficient evidence to support it, it is not for us to set it aside. The cases applying to claims for board, nursing, servants' wages, etc., presumably paid at regular intervals, have no application to the present case.

The decree of the orphans' court is affirmed. Appellant to pay the costs.